## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:23-cv-03117

KATE YOUNG,

Plaintiff,

v.

THE MADELINE HOTEL, TELLURIDE
RESORT PARTNERS, LLC, AUBERGE
RESORTS, LLC, and FLYNN PROPERTIES,
INC., and DOES 1 THROUGH 20, inclusive,

Defendants.

---

### FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

---

Plaintiff, Kate Young ("Plaintiff" or "Ms. Young") by her attorneys, Adelman Matz, P.C.,

for its complaint against the Madeline Hotel, Auberge Resorts Collection, Telluride Resort

Partners, LLC (the "Telluride Resort"), Auberge Resorts, LLC ("Auberge Resorts"), Flynn

Properties, Inc. ("Flynn"), and DOES 1 through 20,   inclusive ("Does") (collectively

"Defendants"), alleges as follows:

### NATURE OF THE CASE

1.      This is a claim for conversion, negligence, breach of innkeeper's duty, and civil

theft resultant from Defendants' improper retention of Ms. Young's suitcase that she shipped to

the Defendant Madeline Hotel, which the Defendant Madeline Hotel received and failed to deliver

to its intended recipient, and which caused Ms. Young to suffer at least one hundred sixty-five thousand two hundred thirty-five dollars ($165,235) in damages.

## **NATURE OF THE PARTIES**

2.      Ms. Young is an individual residing in New York, New York.

3.      Upon information and belief, Defendant Flynn is a real estate investment corporation that owns, in whole and/or in part, the Defendant Madeline Hotel.

4.      Upon information and belief, Defendant Flynn is incorporated in California and maintains a principal place of business at 225 Bush Street, San Francisco, California 94104.

5.      Upon information and belief, Defendant Auberge Resorts is a limited liability company ("LLC") that develops, operates, and owns boutique luxury resorts, residences, and private clubs across North America.

6.      Upon information and belief, Defendant Auberge Resorts owns and operates, in part or in whole, Defendant Madeline Hotel.

7.      Upon information and belief, Defendant Auberge Resorts is organized in the State of Delaware and has a principal place of business at 1060 Redwood Hwy Frontage Road Mill Valley, California 94941.

8.      Upon information and belief Mark Harmon ("Harmon"), is the Principal and Chief Executive Officer of Auberge Resorts.

9.      Upon information and belief, Harmon is a resident of the State of California.

10.     Upon information and belief, Defendant Madeline Hotel is a five-star hotel, owned in whole or in part, by Defendant Flynn and Defendant Auberge Resorts, and which has a principal place of business at 568 Mountain Village Blvd, Telluride, Colorado 81435.

11.     Upon information and belief, Telluride Resort is a limited liability company duly formed and existing under the laws of Colorado, which also maintains its principal place of

2

business at 225 Bush St Ste 1800, San Francisco, CA 94104, and has a registered agent of service at 1900 W. Littleton Boulevard, Suite 1800, Littleton, CO 80120.

12.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1-20 and therefore sues those defendants by those fictitious names. Plaintiff will amend this Complaint to include the true names and capacities of such defendants when ascertained.  Upon information and belief, each fictitiously named defendant either owns and/or controls the day-to-day operations of the Madeline Hotel, and therefore, transacts business in Colorado.

## JURISDICTION AND VENUE

13.     This Court has diversity jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a), because the amount in controversy exceeds seventy-five thousand dollars ($75,000) and because complete diversity of citizenship exists.

14.     Upon information and belief, this Court has personal jurisdiction over the Defendants because Defendants have purposefully availed themselves of doing business in Colorado through establishing a principal place of business within the state of Colorado.

15.     Upon information and belief, venue is proper in this jurisdiction, pursuant to 28 U.S.C. § 1391, because the Defendant Madeline Hotel resides in California and because Defendants Auberge Resorts,  Flynn, and Telluride Resorts own the Defendant Madeline Hotel, whether in whole or in part.

## FACTS COMMON TO ALL CAUSES OF ACTION

16.     Ms. Young is one of the most sought-after fashion stylists in the world. Ms. Young works directly with celebrities, fashion houses, magazines, and other editorial publications to artfully curate high-fashion outfits.

17.     As a part of Ms. Young's profession, she acts as a liaison between fashion brands and her celebrity clientele.

18.    Ms. Young requests clothing, jewelry, and/or footwear from the top fashion brands, and these brands loan Ms. Young the requested item(s), and Ms. Young styles her celebrity clients with the loaned pieces.

19.    As a result of Ms. Young's coordination, celebrities benefit from a carefully curated public appearance and brands receive increased public exposure.

20.    Implicit in Ms. Young's business model is the promise that she will return any and all loaned items to the brands that provided the pieces.

21.    Often, brands loan Ms. Young luxury, expensive, and even one-of-a-kind items for her clients. Should Ms. Young fail to return a brand's product, her credibility with that brand and opportunities to work with that brand in the future will be directly diminished.

22.    Dakota Johnson ("Ms. Johnson"), an A-list actress, is one of Ms. Young's clients.

23.    Ms. Young agreed to style Ms. Johnson for her appearances at the Telluride & Toronto Film Festival, an event that Ms. Johnson attended in Telluride, Colorado (the "Event").

24.    Ms. Johnson booked a stay at the Defendant Madeline Hotel in Telluride, Colorado, while attending the Event.

25.    Upon information and belief, the Defendant Madeline Hotel is a five-star hotel located in Telluride, Colorado.

26.    Upon information and belief, Defendant Auberge Resorts owns the Defendant Madeline Hotel, either in whole or in part.

27.    Upon information and belief, Defendant Auberge Resorts controls and/or operates the day-to-day functions of the Defendant Madeline Hotel, either in whole or in part.

28.    Upon information and belief, Defendant Flynn owns the Defendant Madeline Hotel, either in whole or in part.

29.     Upon information and belief, Defendant Flynn controls and/or operates the day-to-day functions of the Defendant Madeline Hotel, either in whole or in part.

30.     On or around August 28, 2023, prior to the Event, Ms. Johnson checked-in to the Defendant Madeline Hotel.

31.     Upon information and belief, the Defendant Madeline Hotel is advertised as a five-star hotel.

32.     Upon information and belief, the Defendant Madeline Hotel is regularly patronized by celebrities and other high-profile individuals.

33.     Ms. Young agreed to ship Ms. Johnson a suitcase of designer accessories, which was valued at one hundred sixty-five thousand two hundred and thirty-five dollars ($165,235) (the "Suitcase"), to assist Ms. Johnson in styling the outfits that Ms. Johnson intended to wear to the Event.

34.     The Suitcase contained items that various designers loaned Ms. Young and Ms. Johnson, with intent for Ms. Johnson to wear such items at the Event.

35.     The contents of the Suitcase included: Tabayer jewelry; Prounis jewelry; Foundrae jewelry; Hermes shoes; Jimmy Choo shoes; a Gucci purse; Gucci shoes; No. 6 shoes; The Row shoes; a Lowe purse; Aldo shoes; Vivaia shoes; a Bottega purse; and Bottega earrings.

36.     On or around August 29, 2023, Ms. Young shipped the Suitcase to the Defendant Madeline Hotel addressed to Lauren Jeworski, a member of Ms. Johnson's team, care of Ms. Johnson.

37.     On or around September 1, 2023, at 12:44 p.m. (the "Delivery Date and Time"), UPS delivered the Suitcase to the Defendant Madeline Hotel at 568 Mountain Village Blvd., Telluride, Colorado 81435.

38.    The courier provided Ms. Young with a signature confirming delivery of the Suitcase.

39.    The delivery confirmation bears the signature of Jennifer Gallegos ("Gallegos"), who upon information and belief, is the Shipping Manager of the Defendant Madeline Hotel.

40.    Ms. Young did not authorize the Defendant Madeline Hotel to retain possession of the Suitcase after its delivery, in fact, the intended recipient of the Suitcase was Ms. Johnson.

41.    After Ms. Young received confirmation that the Suitcase had arrived at the Defendant Madeline Hotel, Ms. Young promptly notified Ms. Johnson's team of its arrival.

42.    Ms. Johnson's team promptly visited the Defendant Madeline Hotel lobby to retrieve the Suitcase.

43.    The Defendant Madeline Hotel staff, however, told Ms. Johnson's team that the Suitcase was not in their possession.

44.    Upon information and belief, however, the Suitcase was in the Defendant Madeline Hotel package room.

45.    Ms. Young did not authorize the Defendant Madeline Hotel to store the Suitcase in its package room in lieu of providing Ms. Johnson with the Suitcase upon request.

46.    As a result, Ms. Johnson was unable to wear the contents of the Suitcase to a dinner that she was scheduled to attend as part of the Event.

47.    Ms. Young and Ms. Johnson, therefore, could not fully publicize the designers that leant Ms. Young and Ms. Johnson their accessories, and who did so with intent for Ms. Johnson to wear the accessories and provide the designers with publicity.

48.     Ms. Young and, upon information and belief, Ms. Johnson's teams immediately began to search for the Suitcase upon notice that the Defendant Madeline Hotel purportedly never received the Suitcase.

49.     For example, Ms. Young contacted UPS immediately after learning that the Defendant Madeline Hotel did not deliver the Suitcase to Ms. Johnson.

50.     UPS confirmed that it delivered the Suitcase to the Defendant Madeline Hotel at the Delivery Date and Time and that Gallegos signed for its delivery.

51.     In this delivery recipient, UPS indicated that Gallegos received the Suitcase and that Gallegos signed for the delivery of "jewelry, shoes brand name . . . clothes and handbag black or gray . . ."

52.     Upon information and belief, Gallegos knew or should have known that the Suitcase contained designer items after signing for its delivery.

53.     On or around the Delivery Date and Time, Brandon Holman, an employee of the Defendant Madeline Hotel, and Spinkston sent an instant message to Ms. Young's assistant confirming delivery of an unrelated package to Ms. Johnson.

54.     In response, Ms. Young's assistant inquired as to whether the Suitcase was also delivered to Ms. Johnson.

55.     Upon information and belief, employees of Ms. Johnson visited the Defendant Madeline Hotel's front desk and inquired as to the status of the Suitcase.

56.     Upon information and belief, the Defendant Madeline Hotel represented that it did not possess the Suitcase, notwithstanding Gallegos' signatory confirmation of delivery.

57.     Throughout Ms. Johnson's stay at the Defendant Madeline Hotel, Ms. Johnson never received the Suitcase.

7

58.    In fact, on or around September 15, 2023, Ms. Johnson's team confirmed that Ms. Johnson never received the Suitcase.

59.    After learning this information, Ms. Young contacted the Defendant Madeline Hotel directly.

60.    On or around September 15, 2023, Ms. Young spoke with James Spinkston ("Spinkston"), the Director of Guest Services at the Defendant Madeline Hotel.

61.    Spinkston promised Ms. Young that he would review two weeks of security footage of the Defendant Madeline Hotel with purported intent to search for the Suitcase.

62.    On or around September 18, 2023, Spinkston told Ms. Young that he spoke with Gallegos.

63.    Spinkston relayed that Gallegos did not have any notes in her database evidencing delivery of the Suitcase during the time frame that UPS delivers packages.

64.    On or around September 18, 2023, after Ms. Young spoke to Spinkston, she called Raquel McDowell ("Ms. McDowell"), a UPS representative, and told Ms. McDowell that the Defendant Madeline Hotel denied ever receiving the Suitcase.

65.    On or around September 19, 2023, Ms. McDowell contacted Ms. Young and stated that UPS spoke to Gallegos.

66.    Ms. McDowell also stated that Gallegos confirmed that she did, in fact, receive the Suitcase.

67.    Furthermore, Ms. McDowell represented that Gallegos confirmed that Gallegos signed for the Suitcase.

68.    On or around September 19, 2023, Ms. Young again contacted Spinkston.

69.     In this conversation, Spinkston again stated the Defendant Madeline Hotel never received the Suitcase.

70.     After Ms. Young told Spinkston that the Defendant Madeline Hotel signed-for the Suitcase's delivery; however, Spinkston recanted his previous account and confirmed that the Defendant Madeline Hotel did, in fact, receive the Suitcase.

71.     Mr. Spinkston also stated that he, personally, saw the Suitcase on security camera footage.

72.     As a result, on or around September 20, 2023, Ms. Young contacted the Mountain Village Local Police Department ("MVLPD").

73.     With assistance from Officer Jeff Horn of the MVLPD, Ms. Young instituted a case regarding the missing Suitcase.

74.     Upon information and belief, Officer Jeff Horn obtained security camera footage of the Defendant Madeline Hotel, which began prior to the Delivery Date and Time.

75.     Upon information and belief, the security camera shows that Defendant Madeline Hotel received the Suitcase at the Delivery Date and Time, and that the Suitcase was stored in the Defendant Madeline Hotel's package room.

76.     Upon information and belief, the Defendant Madeline Hotel retained possession of the Suitcase in its package room until on or around September 7, 2023.

77.     From the Delivery Date and time to September 7, 2023, the Defendant Madeline Hotel never delivered the Suitcase to Ms. Johnson nor returned the Suitcase to Ms. Young.

78.     Upon information and belief, on or around September 7, 2023, the Suitcase disappears from the Defendant Madeline Hotel's package room, which only employees have access to.

79.     Neither Ms. Johnson, UPS, nor Ms. Young ever received the Suitcase after its disappearance.

80.     Upon information and belief, Defendants, either jointly or severally, failed to return the Suitcase to Ms. Young with the specific intent of permanently depriving Ms. Young of the Suitcase.

81.     As a result, Ms. Young is permanently deprived of the Suitcase.

82.     Upon information and belief, Defendant Madeline Hotel employees possess sole and exclusive access to the Defendant Madeline Hotel package room.

83.     Upon information and belief, the Defendant Madeline Hotel's employees know the identity of guests residing at the Defendant Madeline Hotel.

84.     Upon information and belief, therefore, the Defendant Madeline Hotel's employees knew or should have known that Ms. Johnson was a guest at the Defendant Madeline Hotel.

85.     Upon information and belief, the Defendant Madeline Hotel employees that recognized Ms. Johnson would know Ms. Johnson to be a famous actress; therefore, the Defendant Madeline Hotel employees would likely (and correctly) believe that any package delivered to Ms. Johnson would include expensive items.

86.     Upon information and belief, Defendant Madeline Hotel employees wrongfully took the Suitcase and/or the Defendant Madeline Hotel employees negligently failed to safeguard the Suitcase against external theft.

87.     The Defendant Madeline Hotel is responsible, as an employer, for any act of employee malfeasance that occurs within the scope of employment at the Defendant Madeline Hotel.

88.    Upon information and belief, the Defendant Madeline Hotel employees were acting within the scope of their employment with the Defendant Madline Hotel when the Defendant Madeline Hotel employees either took or negligently failed to safeguard the Suitcase.

89.    Upon information and belief, Defendant Auberge Resorts, Defendant Flynn, and Defendant Telluride Resort own the Defendant Madeline Hotel in whole or in part.

90.    Upon information and belief Defendants Auberge Resorts, Flynn, and Telluride Resort, therefore, are also the Defendant Madeline Hotel's employees' employers.

91.    Upon information and belief, Defendant Auberge Resorts is responsible for any act of the Defendant Madeline Hotel employees' malfeasance because it owns the Defendant Madeline Hotel either in whole or in part.

92.    Upon information and belief, Defendant Flynn is responsible for any act of the Defendant Madeline Hotel employees' malfeasance because it owns the Defendant Madeline Hotel either in whole or in part.

93.    Upon information and belief, Defendant Telluride Resort is responsible for any act of the Defendant Madeline Hotel employees' malfeasance because it owns the Defendant Madeline Hotel either in whole or in part.

94.    Ms. Young worked tirelessly to develop her reputation as both a fashion savant and a shrewd businesswoman. Defendants' actions have damaged her reputation with designer clients, celebrity clients, and the fashion world alike.

95.    The Tabayer jewelry included in the Suitcase is valued at eighty-nine thousand seven hundred dollars ($89,700).

96.    The Prounis jewelry included in the Suitcase is valued at nineteen thousand nine hundred dollars ($19,900).

97.     The Foundrae jewelry included in the Suitcase is valued at thirty-three thousand three hundred seventy-five dollars ($33,375).

98.     The Hermes shoes included in the Suitcase are valued at one thousand one hundred seventy-five dollars ($1,175).

99.     The Jimmy Choo shoes include in the Suitcase are valued at eight hundred seventy-five dollars ($875).

100.    The Gucci purse and shoes included in the Suitcase are valued at three thousand seven hundred forty dollars ($3,740).

101.    The No. 6 Shoes included in the Suitcase are valued at three hundred dollars ($300).

102.    The Row Shoes included in the Suitcase are valued at nine hundred ninety dollars ($990).

103.    The Loewe purse included in the Suitcase is valued at two thousand four hundred dollars ($2,400).

104.    The Aldo shoes included in the Suitcase are valued at five hundred twenty dollars ($520).

105.    The Vivaia shoes included in the Suitcase are valued at four hundred thirty dollars ($430).

106.    The Bottega purse and earrings included in the Suitcase are valued at eleven thousand three hundred fifteen dollars ($11,315).

107.    The Away suitcase itself is valued at four hundred twenty five dollars ($425).

108.    The contents of the Suitcase taken from the Defendant Madeline Hotel boast a valuation of one hundred sixty five thousand two hundred thirty-five dollars ($165,235 USD).

109.    Ms. Young also suffered monetary damages, in an amount to be determined at trial, for lost profits throughout the time that her and her team expended in search of the Suitcase.

110.    Along with the monetary damages Ms. Young incurred, she also suffered reputational damage, and loss of income throughout the time spent searching for the Suitcase.

111.    Furthermore, because the Defendant Madeline Hotel failed to provide Ms. Young and/or Ms. Johnson with the Suitcase in bad faith, Ms. Young is seeking attorneys' fees as the natural and legitimate consequence of Defendants' bad faith and/or intentional conduct.

**COUNT I**
**CONVERSION**
**(Kate Young against All Defendants)**

112.    Ms. Young repeats and re-alleges each and every allegation of paragraphs 1 through 111 as above as if fully set forth herein.

113.    Upon information and belief, at all relevant times, Defendants Flynn, Auberge Resorts, and Telluride Resort own the Defendant Madeline Hotel, in whole or in part, and are liable for tortious acts committed by the Defendant Madeline Hotel.

114.    Upon information and belief, at all relevant times, Defendants Flynn, Auberge Resorts, and Telluride Resort individually and/or collectively, exercised control over the day-to-day operations of the Defendant Madeline Hotel and are liable for tortious acts committed by the Defendant Madeline Hotel.

115.    On or around August 28, 2023, Ms. Young shipped the Suitcase to the Defendant Madeline Hotel.

116.    At the Delivery Date and Time, the Gallegos received and signed for the Suitcase's delivery.

13

117.    Upon information and belief, from the Delivery Date and Time, through September 7, 2023, the Defendant Madeline Hotel retained possession of the Suitcase in its package room.

118.    Upon information and belief, Defendant Madeline Hotel employees retain sole and exclusive access to the Defendant Madeline Hotel package room.

119.    Upon information and belief, the Defendant Madeline Hotel's employees, including Spinkston and Gallegos, either knew or should have known that the Defendant Madeline Hotel possessed the Suitcase but told Ms. Young that the Defendant Madeline Hotel did not possess the Suitcase.

120.    Upon information and belief, the Defendant Madeline Hotel's employees, including Spinkston and Gallegos, either knew or should have known that the Defendant Madeline Hotel possessed the Suitcase from the Delivery Date and Time and failed to deliver the Suitcase to either Ms. Johnson or Ms. Young.

121.    Upon information and belief, the Suitcase disappeared from the Defendant Madeline Hotel on September 7, 2023.

122.    Upon information and belief, on September 7, 2023, the Suitcase was taken from the Defendant Madeline Hotel.

123.    Upon information and belief, at least Gallegos knew or should have known that the Suitcase possessed designer items because Gallegos signed for confirmation of the Suitcase's delivery and because the signatory confirmation bears acknowledgement that the contents contain "brand name" items.

124.    Upon information and belief, Defendant Madeline Hotel employees took the Suitcase.

14

125.    The value of these goods in the Suitcase was one hundred sixty-five thousand two hundred thirty-five dollars ($165,235) USD.

126.    On September 7, 2023, the Defendant Madeline Hotel employees took the Suitcase from Ms. Young's possession and converted the Suitcase to their own use.

127.    By reason of the above, the plaintiff has sustained damages of one hundred sixty-five thousand two hundred thirty-five dollars ($165,235), plus interest from the date of conversion, and has incurred monetary damages in an amount to be determined at trial resultant from lost profits throughout the time that Ms. Young and her employees searched for the Suitcase.

128.    By reason of the above, Ms. Young sustained non-pecuniary damages that include reputational damage.

129.    By reason of the above, Defendants converted the Suitcase in bad faith and/or intentionally, and as a natural and legitimate consequence of Defendants' tortious conduct, Ms. Young is entitled to attorney's fees.

**COUNT II**
**NEGLIGENCE**
**(Kate Young against All Defendants)**

130.    Ms. Young repeats and re-alleges each and every allegation of paragraphs 1 through 127 as above as if fully set forth herein.

131.    Upon information and belief, at all relevant times, Defendants Flynn, Auberge Resorts, and Telluride Resort owned the Defendant Madeline Hotel, whether in whole or in part.

132.    Upon information and belief, at all relevant times, Defendants Flynn, Auberge Resorts, and Telluride Resort exercised control over the day-to-day activities of the Defendant Madeline Hotel.

133.    On or around August 28, 2023, Ms. Young shipped the Suitcase to the Defendant Madeline Hotel.

134.    At the Delivery Date and Time, UPS delivered the Suitcase and the Defendant Madeline Hotel provided signatory confirmation of its delivery.

135.    Upon information and belief, from the Delivery Date and Time through September 7, 2023, the Defendant Madeline Hotel retained possession of the Suitcase in its package room.

136.    Upon information and belief, by confirming delivery of the Suitcase, the Defendant Madeline Hotel owed Ms. Young a duty to safeguard and deliver the Suitcase to its intended recipient, Ms. Johnson.

137.    Upon information and belief, the Defendant Madeline Hotel owed Ms. Young a duty to safeguard the Suitcase while the Defendant Madeline Hotel stored the Suitcase in its package room from the Delivery Date and Time through September 7, 2023.

138.    Upon information and belief, the Defendant Madeline Hotel breached its duty to deliver the Suitcase when it failed to deliver the Suitcase to Ms. Johnson, notwithstanding its possession of the Suitcase and its employees', including Spinkston's and Gallegos', confirmation that the Defendant Madeline Hotel was in possession of the Suitcase at least from the Delivery Date and Time through September 7, 2023.

139.    Upon information and belief, the Defendant Madeline Hotel breached its duty to safeguard the Suitcase because the Suitcase disappeared from the Defendant Madeline Hotel's package room, which upon information and belief, can only be accessed by Defendant Madeline Hotel employees.

140.    Upon information and belief, the Defendant Madeline Hotel's breach of its duties to deliver the Suitcase and safeguard the Suitcase caused the Suitcase to disappear from the Defendant Madeline Hotel package room on September 7, 2023.

141.    Upon information and belief, Defendant Auberge Resorts owed a duty of care to Ms. Young as the owners and operators of the Defendant Madeline Hotel, to deliver and safeguard the Suitcase because it was in possession of the Defendant Madeline Hotel, which is owned in whole or in part by Defendant Auberge Resorts, and which Defendant Auberge Resorts controls the day-to-day operations of.

142.    At all relevant times, Defendant Flynn owed a duty of care to Ms. Young, as the owners and operators of the Defendant Madeline Hotel, to deliver and safeguard the Suitcase because it was in possession of the Defendant Madeline Hotel, which is owned in whole or in part by Defendant Flynn, and which Defendant Flynn controls the day-to-day operations of.

143.    At all relevant times, Defendant Telluride Resort owed a duty of care to Ms. Young, as the owners and operators of the Defendant Madeline Hotel, to deliver and safeguard the Suitcase because it was in possession of the Defendant Madeline Hotel, which is owned in whole or in part by Defendant Telluride Resort, and which Defendant Telluride Resort controls the day-to-day operations of.

144.    Defendant Auberge Resorts breached its duty of care owed to Ms. Young by failing to ensure delivery of the Suitcase and Safeguard the Suitcase.

145.    Defendant Flynn breached its duty of care owed to Ms. Young by failing to ensure delivery of the Suitcase and Safeguard the Suitcase.

146.    Defendant Telluride Resort breached its duty of care owed to Ms. Young by failing to ensure delivery of the Suitcase and Safeguard the Suitcase.

147.    Defendants Auberge Resorts, Flynn, and Telluride Resort' respective breaches of their, respective, duties of care owed to Ms. Young caused the Suitcase to disappear from the Defendant Madeline Hotel.

148.    Defendants Madeline Hotel's. Auberge Resorts', Flynn's, and Telluride Resort's individual and collective negligence damaged Ms. Young in an amount of one hundred sixty-five thousand two hundred thirty-five dollars ($165,235) and has caused Ms. Young to incur monetary damages in an amount to be determined at trial resultant from lost profits throughout the time that Ms. Young and her employees searched for the Suitcase.

149.    Defendants' breach also caused Ms. Young to suffer non-pecuniary damages such as loss of reputation.

150.    By reason of the above, Defendants' negligence occurred in bad faith, and as a natural and legitimate consequence of Defendants' tortious conduct, Ms. Young is entitled to attorney's fees.

## COUNT III
## BREACH OF INNKEEPER DUTY
### (Kate Young against All Defendants)

151.    Ms. Young repeats and re-alleges each and every allegation of paragraphs 1 through 150 as above as if fully set forth herein.

152.    At all relevant times, the Defendant Madeline Hotel was an innkeeper.

153.    Upon information and belief, at all relevant times, Defendant Auberge Resorts owned the Defendant Madeline Hotel, whether in whole or in part.

154.    Upon information and belief, at all relevant times, Defendant Auberge Resorts exercised control over the day-to-day operations of the Defendant Madeline Hotel.

155.    Upon information and belief, at all relevant times, Defendant Flynn owned the Defendant Madeline Hotel, whether in whole or in part, and exercised control over the day-to-day operations of the Defendant Madeline Hotel.

156.    Upon information and belief at all relevant times, Defendant Flynn exercised control over the day-to-day operations of the Defendant Madeline Hotel.

157.    Upon information and belief, at all relevant times, Defendant Telluride Resort owned the Defendant Madeline Hotel, whether in whole or in part, and exercised control over the day-to-day operations of the Defendant Madeline Hotel.

158.    At all relevant times, Defendant Telluride Resort exercised control over the day-to-day operations of the Defendant Madeline Hotel.

159.    On or around August 28, 2023, Ms. Young shipped the Suitcase to the Defendant Madeline Hotel.

160.    At the Delivery Date and Time, UPS delivered the Suitcase to the Defendant Madeline Hotel, which the Gallegos signed for at 12:44 p.m.

161.    Upon information and belief, at least Gallegos knew or should have known that the Suitcase possessed designer items because Gallegos signed for confirmation of the Suitcase's delivery and because the signatory confirmation bears acknowledgement that the contents contain "brand name" items.

162.    At all relevant times, the Defendants, individually and collectively, owed Ms. Young a duty, as an innkeeper, to safely deliver the Suitcase.

163.    The Defendants never delivered the Suitcase to Ms. Johnson nor Ms. Young, notwithstanding their obligation to do so.

164.    Defendants' breach caused Ms. Young to suffer a loss of one hundred sixty-five thousand two hundred thirty-five dollars ($165,235), plus interest for failing to deliver the Suitcase, and monetary damages in an amount to be determined at trial resultant from lost profits throughout the time that Ms. Young and her employees searched for the Suitcase.

165.    Defendants' breach also caused Ms. Young to suffer non-pecuniary damages such as loss of reputation and the degradation of her relationships with celebrity clients and luxury brands resulting from the Suitcase's disappearance.

166.    By reason of the above, Defendants converted the Suitcase in bad faith and/or intentionally, and as a natural and legitimate consequence of Defendants' tortious conduct, Ms. Young is entitled to attorney's fees.

### COUNT IV
### CIVIL THEFT
### (Kate Young against All Defendants)

167.    Ms. Young repeats and re-alleges each and every allegation of paragraphs 1 through 166 as above as if fully set forth herein.

168.    At all relevant times, the Defendant Madeline Hotel was an innkeeper.

169.    Upon information and belief, at all relevant times, Defendant Auberge Resorts owned the Defendant Madeline Hotel, whether in whole or in part.

170.    Upon information and belief, at all relevant times, Defendant Auberge Resorts exercised control over the day-to-day operations of the Defendant Madeline Hotel.

171.    Upon information and belief, at all relevant times, Defendant Flynn owned the Defendant Madeline Hotel, whether in whole or in part.

172.    Upon information and belief, at all relevant times, Defendant Flynn exercised control over the day-to-day operations of the Defendant Madeline Hotel.

173.    Upon information and belief, at all relevant times, Defendant Telluride Resort owned the Defendant Madeline Hotel, whether in whole or in part.

174.    Upon information and belief, at all relevant times, Defendant Telluride Resort exercised control over the day-to-day operations of the Defendant Madeline Hotel.

175.    On or around August 28, 2023, Ms. Young shipped the Suitcase to the Defendant Madeline Hotel.

176.    At the Delivery Date and Time, UPS delivered the Suitcase to the Defendant Madeline Hotel, which the Gallegos signed for at 12:44 p.m.

177.    Upon information belief, Gallegos knowingly took the Suitcase and stored it in the Defendant Madeline Hotel's package room.

178.    Upon information and belief, after Gallegos signed for the Suitcase, the Defendant Madeline Hotel knowingly took possession and/or retained control over the Suitcase.

179.    Plaintiff did not authorize the Defendant Madeline Hotel to retain possession and/or control over the Suitcase. Indeed, the Defendant Madeline Hotel was obligated to deliver the Suitcase to Ms. Johnson, its intended recipient.

180.    Upon information and belief, the Defendant Madeline Hotel intentionally failed to the deliver the Suitcase to Ms. Johnson after Gallegos signed for the delivery of the Suitcase at the Delivery Date and Time.

181.    In fact, upon information and belief, security camera footage shows that the Defendant Madeline Hotel retained unauthorized possession of the Suitcase from the Delivery Date and Time until on or around September 7, 2023. During this time period, the Defendant Madeline Hotel retained unauthorized possession of the Suitcase and refused to deliver the Suitcase to Ms. Johnson.

182.    Upon information and belief, after September 7, 2023, the Suitcase went missing from the Defendant Madeline Hotel package room.

183.    The Suitcase was never returned to Plaintiff.

184.    Upon information and belief, Defendants failed to return the Suitcase to Ms. Young with specific intent to permanently deprive Ms. Young of the Suitcase.

185.    To date, Ms. Young is permanently deprived of the Suitcase and the value thereof.

186.    As a result of the Defendant Madeline Hotel's acceptance of the Suitcase, knowing unauthorized possession of the Suitcase, Defendants permanently deprived Plaintiff of the Suitcase, which is valued at one hundred sixty-five thousand two hundred thirty-five dollars ($165,235).

187.    Accordingly, Plaintiff is damaged in an amount of one hundred sixty-five thousand two hundred thirty-five dollars ($165,235).

188.    By reason of the above, Defendants converted the Suitcase in bad faith and/or intentionally, and as a natural and legitimate consequence of Defendants' theft, Ms. Young is entitled to attorney's fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the Court to enter judgment in its favor and against Defendants, as follows:

i.    On Cout I, Conversion,

  a.    For a judgment against defendants, jointly and severally, for the sum of one hundred sixty-five thousand two hundred thirty-five dollars ($165,235), plus interest from September 1, 2023;

  b.    For a judgment against Defendants, jointly and severely, for lost profits incurred throughout the time Ms. Young and her employees expended searching for the Suitcase;

     c.  For an award of non-pecuniary damages, including but not limited to, loss of reputation.

     d.  For costs and reasonable attorneys' fees.

ii.    On Cout II, Negligence,

     a.  For a judgment against defendants, jointly and severally, for the sum of one hundred sixty-five thousand two hundred thirty-five dollars ($165,235), plus interest from September 1, 2023;

     b.  For a judgment against Defendants, jointly and severely, for lost profits incurred throughout the time Ms. Young and her employees expended searching for the Suitcase;

     c.  For an award of non-pecuniary damages, including but not limited to, loss of reputation.

     d.  For costs and reasonable attorneys' fees.

iii.    On Cout III, Breach of Innkeeper's Duty,

     a.  For a judgment against defendants, jointly and severally, for the sum of one hundred sixty-five thousand two hundred thirty-five dollars ($165,235), plus interest from September 1, 2023;

     b.  For a judgment against Defendants, jointly and severely, for lost profits incurred throughout the time Ms. Young and her employees expended searching for the Suitcase;

     c.  For an award of non-pecuniary damages, including but not limited to, loss of reputation.

     d.  For costs and reasonable attorneys' fees.

iv.    On Cout IV, Civil Theft,

     a.  For a judgment against defendants, jointly and severally, for the sum of one hundred sixty-five thousand two hundred thirty-five dollars ($165,235), plus interest from September 1, 2023;

     b.  For a judgment against Defendants, jointly and severely, for lost profits incurred throughout the time Ms. Young and her employees expended searching for the Suitcase;

c.  For an award of non-pecuniary damages, including but not limited to, loss of reputation;

d.  For costs and reasonable attorneys' fees.

v.  That any judgment be entered against Defendants jointly and severally; and

vi.  For such other and further relief in favor of Plaintiff as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury on all claims for relief and issues triable by jury.

Dated: New York, New York
May 21, 2024

Respectfully Submitted,

By : __/s/Celena E. Stoia_____
Sarah M. Matz, Esq.
Gary Adelman, Esq.
Celena E. Stoia, Esq.
ADELMAN MATZ, P.C.
1159 Second Ave, Ste 153
New York, New York 10065
(t): (646) 650-2207
(e): sarah@adelmanmatz.com
(e): g@adelmanmatz.com
(e): cstoia@adelmanmatz.com
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, pursuant to Federal Rul of Civil Procedure Rules 5(a)(1)(B) and 5(1)(b)(2)(E), on May 21, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system that will send notification of such filing to all counsel of record.


<u>/s/ *Celena E. Stoia*</u>
Celena E. Stoia, Esq.